IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                      Case No. 3:14CR115

      Plaintiff

      v.                                                                    **ORDER**

Timothy Workman,

      Defendant

This is a criminal case in which the grand jury has charged the defendant with being a felon in unlawful possession of firearms. Pending is the defendant's motion to suppress the weapons, which officers found on executing a search warrant at a house that he owned, but which he had rented to another individual not involved in this case. (Doc. 34).

The gravamen of the motion is that the affidavit used to obtain the search warrant issued by a Mercer County, Ohio, Municipal Judge contained deliberately or recklessly false material information and thus was insufficient to establish probable cause.

For the reasons that follow, I deny the motion to suppress. Though defendant asks for a *Franks* hearing, I conclude that the affidavit, shorn of any inaccuracies, presented ample probable cause for the issuing judge to grant the application for the warrant.

**Background**

According to a Village of Rockford, Ohio, police report dated September 30, 2013, the mother of a juvenile female informed officers that her daughter had told her on September 20, 2013, that a man named Scott Sheeley had approached her about "modeling." After meeting at a gas station, the man had gone with the daughter (herein referred to as "A.B.") to a motel room, where he had taken nude or semi-nude photos and paid her $70. A.B. also told her mother that she was receiving texts from "Christy," who A.B. thought was actually Scott.

The Rockford officer also interviewed A.B., who, like her mother, provided a handwritten statement. She described the motel where she and another juvenile female (referred to herein as "C.B.") went with "Scott." She described how he, against her will, took pictures of the two juveniles.

After these interviews, the Rockford officer notified the Mercer County Sheriff's Department.  Sheriff's Detective Doug Zimmerman prepared the affidavit at issue in this case. He appeared before Judge James J. Scheer, who granted the search warrant.

The affidavit stated, *inter alia*, "during the Summer of 2013, two juvenile females from Rockford, Ohio, became acquainted with a subject *identified to them* as a Timothy Scott Workman." (Doc. 34-1 at 2) (emphasis supplied).

The affidavit also stated that Detective Zimmerman and an officer of the Wapakoneta, Ohio, Police Department had interviewed C.B. She confirmed the account the officers had received from A.B. about having been photographed at the motel, which she identified as a Knights Inn. She also stated there had been a second session, and that she was receiving texts for more "modeling."

In addition, the affidavit stated that later the same evening a female officer had called the number from which the texts had come. Using one of the juvenile's cell phones, she pretended to

2

be that individual. She asked to meet for a "video shoot," and was told she would have to do "more," "all of it leaves the country, I'll pay you if you will do great shoots for me." (*Id.* at 2-3).

Though the affidavit does not indicate that he had done so, Detective Zimmerman had recorded his interviews with the juveniles.

During her recorded interview, A.B. did not identify the defendant by his last name. She did, however, refer to the individual who had enticed her and C.B. into the photography sessions as "Scott." She was, though, able to identify for Detective Zimmerman the gym where she came to know Scott through MMA training. She also indicated that C.B. had referred to Scott Sheeley, with whom C.B. had become friends *via* Facebook.

Detective Zimmerman showed A.B. a picture (from the Ohio Attorney General's website) of the defendant. She immediately identified the picture as being that of the person who had taken the photos of her and C.B. She also restated that she only knew him as Scott and didn't know his last name.

The officers also recorded their interview with C.B. She too knew Scott from her training with him at "Battlezone." Verbatim, the interview continued:

Q. "So, who is Scott? Who do you know Scott to be?

A. "The guy that runs the gym that I go to."

Q. "Do you know his last name?"

A. "Workman."

Q. "So you're definitely sure that it's Scott Workman?"

A. "Oh, yeah."

3

Later in the interview, another detective asked C.B., "What's his last name?" To which C.B. responded, "Scott? Workman." When the detective then asked C.B. if she knows a "Scott Sheeley," she answered "yes," and stated it was not Scott Sheeley who took the photos.

In addition, C.B., as had A.B., described where the defendant lived. This information was consistent with what the officers already knew about defendant's residential address.

## Analysis

The linchpin of defendant's motion is the statement in the affidavit that, "during the Summer of 2013, two juvenile females from Rockford, Ohio, became acquainted with a subject *identified to them* as a Timothy Scott Workman." According to the motion, this statement was false and justifies a *Franks* hearing and suppression.

In light of what the juvenile victims said during their interviews, as recorded, rather than as merely summarized in the affidavit, it is clear that C.B. had expressly identified the defendant as the person who took the photos. Moreover, she amply explained how it was she knew him – through her training at a gym. Though A.B. only knew him as Scott, and was confused about his last name, she also referred to having met Scott at the gym.[1]

To some extent, the passive voice phrasing (that the "subject identified to them") gives rise to the present motion. It is clear, however, in light of the interviews, that, indeed, one of the victims identified the defendant as the person depicted in the material from the Attorney General's website. There was, therefore, nothing false about that statement in the affidavit. There is, accordingly, no basis or need for a *Franks* hearing.

---

[1] Through no one's fault, defense counsel had not had access to the recordings of the interviews with the juveniles before filing the motion.

In his reply brief, the defendant argues that the showing of the materials from the Attorney General's website was unduly and impermissibly suggestive.

If that were all that the officers learned from their interviews (*i.e.,* that, after being shown a single photo, A.B. pointed, in the effect, at the photo, and there was nothing else to connect the defendant with the activities giving rise to the search warrant) the defendant might have an argument.

But the record is also clear that, even if, arguably, the affidavit should have disclosed the "one photo array," the solo photo did not taint the reliability of the other information known to the officers from their interviews. They had C.B.'s direct statements connecting the defendant with the photo shoots. No matter how suggestive the one photo array may have been, there was direct evidence of defendant's involvement from C.B.'s statements alone.

## Conclusion

For the foregoing reasons, I find no falsity, much less recklessly indifferent or deliberate falsity, tainted the affidavit in this case. That being so, I need neither hold a *Franks* hearing nor address the government's arguments about the defendant's lack of standing to overrule the motion.

It is, accordingly,

ORDERED THAT defendant's motion to suppress (Doc. 34) be, and the same hereby is overruled.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

5